## NAGY v. SOLVAY PROCESS CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—HERNIA —BURDEN OF PROOF.

> Where plaintiff claimed that a hernia from which he was suffering was caused by an accident while in defendant's employ, which was disputed, the burden of proof was upon him to establish the fact, in proceedings under the workmen's compensation law.

2. SAME—APPEAL AND ERROR—ISSUE OF FACT—FINDING OF INDUSTRIAL ACCIDENT BOARD.

> In such case, an issue of fact, fairly raised by conflicting evidence, direct or circumstantial, is for the industrial accident board to decide, and its decision upon that point is final.

3. SAME—CREDIBILITY OF WITNESSES—ISSUE OF FACT.

> The committee on arbitration and the industrial accident board are the judges of the credibility of the witnesses before them, in an issue of fact, and their finding that the plaintiff had failed to sustain the burden of proof will not be disturbed by the Supreme Court.

4. SAME — RULINGS OF ARBITRATION COMMITTEE — EVIDENCE — PREJUDICIAL ERROR.

> Where the hearings before the arbitration committee were of an informal nature, and all parties in interest had full opportunity to be heard, while certain admissible facts which plaintiff desired to bring before the committee were excluded, on objection, there was no prejudicial error where their substance was fully developed in later testimony, and the rulings complained of could have no controlling influence in the result reached upon the basic issue involved.

5. SAME—WAIVER.

> Where defendant denied liability, but paid plaintiff's hospital expenses and gave him half pay for the time lost, stating it did so because he was unfortunate, it did not thereby waive anything, under the circumstances.

6. SAME—WRITTEN DENIAL OF LIABILITY—ADMISSION OF LIABILITY.
   Where, after plaintiff made claim for compensation, and de-

fendant was notified, it wrote the board the same month denying liability, and the board the same month wrote plaintiff advising him of this denial, while the proceedings were somewhat informal, it cannot be said that defendant, in legal effect, admitted liability by failing to file and serve on plaintiff written denial of liability.

Certiorari to Industrial Accident Board. Submitted January 8, 1918. (Docket No. 12.) Decided March 28, 1918.

Bertalan Nagy presented his claim for compensation against the Solvay Process Company for injuries received in defendant's employ. From an order denying compensation, plaintiff brings certiorari. Affirmed.

*Raymond E. Van Sycle,* for appellant.

*Angell, Bodman & Turner* and *C. G. Dyer,* for appellee.

STEERE, J. On March 7, 1916, plaintiff made application for employment as a common laborer at the plant of defendant and was accepted as such, without any physical examination. He is a native of Austria and his previous employment since coming to America had been in handling coal or wood. He was put at unloading stone from cars into a furnace, on a shift of nine hours a day at 27½ cents per hour. On the fourth day of his employment he quit before his shift ended under circumstances somewhat in dispute. The foreman under whom he worked testified that no accident or injury occurred to his knowledge and plaintiff made no complaint of having been hurt at the time he left; that he approached him and said he wanted another job because there was too much gas there, which was the only reason he gave for quitting; that he spoke in understandable English, walked straight with his hands down and said nothing then or at any other

time about being hurt. Plaintiff testified that he quit because he was hurt while putting back the cover of the furnace with an iron bar which slipped and struck him on the stomach, causing such severe pain that he could not continue at work, and, on reaching his boarding house, discovered a severe rupture had resulted from the accident.

About four days later, on March 14th, he appeared at defendant's office, and, claiming to have been seriously injured at the time he quit work, asked to be sent to a hospital for treatment. Defendant sent him to Harper hospital where he was examined by Dr. McAlpin of that institution, who found that he was afflicted with a large, old scrotal hernia, for cure of which an operation was necessary. He found him otherwise in good physical condition, and the doctor operated upon him the following day, March 15th, finding conclusively, as the doctor testified, that the rupture was of long standing, without indications of recent injury, increase or inflammation. Plaintiff remained in the hospital three weeks and was discharged about April 5th as cured, Dr. McAlpin testifying:

"The condition of the man when I discharged him was very good; the wound was healed, the hernia was cured, entirely cured."

Plaintiff testified that after he was discharged from the hospital he was unable to work for about two months; that he went back to work for defendant for about four days, at what time he does not state, but was unable to work longer because he was so weak and the place where he was operated upon hurt him badly. Defendant's records, however, show that he returned to work on April 29th, putting in one full day's time, and then was absent until May 8th when he resumed his employment and worked until May 23d, quitting without notice or making any complaints about his work. Prior to this defendant had assumed

all his hospital expenses, amounting to $118, and, aside from his wages, given him $45.

On July 3, 1916, he made demand of defendant for compensation, and, liability being denied, on July 21st, filed his claim with the industrial accident board. A hearing was had on September 8th before a committee of arbitration which rejected his claim and refused to award him compensation. Upon appeal from the decision of the arbitration committee to the industrial accident board the decision of the committee was affirmed, on January 8, 1917.

Prior to making return to the writ of certiorari issued herein no written finding of facts was filed by the industrial accident board, and plaintiff's principal claim is that the board's denial of an award amounted to an erroneous conclusion of law, contrary to the undisputed facts in the case. In its return the board embodies a statement of the case dealing with the essential facts claimed by plaintiff, both conceded and disputed, saying in part as follows:

"Before the entry of said order, a copy of which is designated as Exhibit G, the industrial accident board found as a fact that no accident was suffered by claimant while he was working for defendant; that the operation was made necessary by a pre-existing scrotal hernia, which was not in any manner caused or affected by claimant's employment at the Solvay Process Company; that after recovering from the operation claimant was in better physical condition than he was before, and that the Solvay Process Company owed him nothing."

It is conceded that plaintiff was afflicted with a scrotal hernia requiring an operation for its cure. He claimed it was caused by an accident which he suffered while in defendant's employ. This was denied. The burden of proof rested upon him to establish the fact. If there was conflicting evidence upon that affirmance

and denial, direct or circumstantial, fairly raising an issue of fact it was for the board to decide, and its decision upon that point disposes of the case.

While certain of plaintiff's compatriots testified to what he showed and told them of the accident of which they saw indications, amongst which were that "it was black and blue where he got hurt," he was the only direct witness to this claimed accident. He testified that when the bar slipped and struck the side of his stomach it hurt him so that he could not work and had to quit, that he "showed the boss the cause" and told him he would go home, to which he answered "all right," and "the fellows took me down in their own place." The foreman testifies that he heard nothing of anything happening to plaintiff when he quit, who said nothing about being hurt, walked straight when he came to him and gave as his reason for quitting that he wanted another job because of too much gas there.

Plaintiff testified that he did not report at the company's office until the third day after this because he was laid up and unable to walk, that he wanted to and did go to the hospital for treatment, where he was operated on and remained 21 days, but since the operation his left leg has been sore and he could do no heavy work because "that place always comes out just as soon as I work hard," and he had gone to see two doctors about it, whom he did not call as witnesses; that before the accident his health was good and he never had a hernia.

The only medical witness plaintiff produced was Dr. McEwen who testified that once, on August 9, 1916, he was called to visit plaintiff and treated him for a cold, that he did not then complain of anything else being wrong with him nor show his leg or side where he was operated on, as the witnesses recalled, but witness did examine the place of operation later when a

fellow countryman brought plaintiff to his office, but was unable to testify whether or not that would reduce his working capacity.

Dr. McAlpin testified that when he examined plaintiff there were no black and blue marks or bruises on his body, nor signs of recent injury or inflammation, but he found signs of an old inflammation, or irritation, such as one might get from wearing a truss a good many years; that plaintiff had a large scrotal hernia of long standing which was not the result of an injury and could be easily reduced, and many men having that type of hernia work, with it supported by a truss; that the sac of a recent hernia is very thin and of pinkish color but as it gets older it always becomes thicker and greyish in color, and the operation disclosed the sac of this hernia was of a greyish color and greatly thickened, with no signs of recent inflammation, a condition found only in old hernias.

It is not the province of this court to review the testimony or deal with disputed facts beyond the question of whether there is evidence, direct or inferential, to put the controlling facts in issue and support the findings thereon by the board, whether positive or negative. We think the testimony referred to, as well as other items of evidence scattered through the record which it would serve no useful purpose to detail, fairly raise an issue of fact as to whether plaintiff has sustained the burden of proof resting upon him to show that he suffered an accidental injury while in defendant's employ as he claims and testifies. Both the committee on arbitration, which heard and saw the witnesses, and the accident board on appeal found he did not. They are the judges of the credibility of the witnesses where that question is involved in an issue of fact. We find no occasion to disturb their conclusions.

Various of plaintiff's claimed errors involve as we

regard them purely questions of fact. Others relate to rulings upon the admission of testimony, some of which are erratic, and, considered alone, technically erroneous when made, but in view of the nature of the investigation and latitude given to the inquiry in other portions of the testimony we do not regard the adverse rulings complained of as prejudicial error demanding reversal. An examination of the record with reference to rulings upon admission and rejection of testimony discloses that the arbitration committee in making, under authority of the statute, "such inquiries and investigations as it shall deem necessary," conducted an open forum in which the hearings were of an informal nature, apparently all parties in interest being furnished full opportunity to be heard. On the whole, wide latitude was given in, the examination of plaintiff and his witnesses, abundance of incompetent hearsay evidence was allowed and even the unsworn statements of some of his attending fellow-countrymen, designated in the record as "bystanders," was heard and recorded apparently without protest. While certain admissible facts which plaintiff desired to bring before the committee were excluded at the time objections to questions asked were sustained, we think their substance was fully developed in later testimony, fairly before the committee for consideration, and the particular rulings complained of could have no controlling influence in the result reached upon the basic issue involved.

It is further urged that by failing to file and serve upon plaintiff written denial of liability defendant in legal effect admitted the same, which further stands confirmed in fact by admissions of its agents at a conference held May 4th, when it agreed to compensate plaintiff and give him further work. In support of the latter proposition plaintiff's counsel quote from the testimony of a witness named Bolla, as follows:

"Mr. Hadrick and Mr. Sanders said right there that they were going to pay Mr. Nagy. Mr. Sanders said that he will see to it that Nagy gets his half pay and then positive that he gets a job."

Bolla also testified further in part:

"Mr. Sanders said he would report this matter to Mr. Green, what he would do about it, of course Sanders would not say. They asked me what this man wanted. I came to the conclusion while trying this case there wasn't anything to it at all. I said to Mr. Hadrick, 'Why don't you pay this man the salary; that is all he wants, and give him a job at what he can do.' So Mr. Hadrick asked Mr. Sanders and he said I think we can do that, it isn't much. * * * I was there as interpreter acting for Nagy. I done the best I could for him. I expect to be paid by him for that * * * Mr. Sanders said he will see to it that Nagy gets his half pay and then positive he gets a job. About $45 was half of the wages he had lost up to that time. Nagy was satisfied with that."

A member of the industrial accident board was in Detroit at that time and attended this conference. The following memorandum by him in reference to it appears as Exhibit H in the record:

"5-4-16.

"Solvay will not admit accident, as doctor says hernia was old one. Solvay paid for operation and medical attention. Only dispute about a matter of five weeks' compensation. Man claims 7 weeks' disability. Deducting waiting period leaves five weeks due. Mr. Sanders of Solvay says that they may pay this rather than arbitrate.

"T. B. G."

Of this conference the industrial accident board finds and returns:

"That on May 4, 1916, claimant, a representative of respondent and Thomas B. Gloster, a member of the industrial accident board, held a conference in the city of Detroit, at which time the respondent expressly denied liability under the workman's compensation act,

on the ground that the claimant had suffered no injury while in respondent's employ; that said claim was squarely made to the claimant and that he understood it. That all of claimant's hospital expenses were paid by the respondent and later claimant was paid $45 by the respondent, which amounted to half pay for the time he was disabled on account of his operation. Respondent always denied liability and claimed to give said money to said claimant and to pay said hospital bills merely because claimant was unfortunate and had been working for the respondent, * * * that under the circumstances of the case, said respondent did not waive anything by paying the hospital expenses of claimant and by paying him the $45."

We are of opinion that there is abundant testimony in the case to support this conclusion.

In July, after plaintiff made claim with the industrial accident board for compensation and defendant was notified, defendant wrote the board on July 11, 1916, denying liability and on July 19th the board wrote plaintiff advising him of this denial. While these proceedings were perhaps somewhat informal the board had on file with it defendant's denial of liability and plaintiff had written notice of such denial. We find no error in the rulings of the board in this particular.

The order of the industrial accident board is therefore affirmed.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.