BROWN v. BOUSCHOR.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—FINDINGS OF INDUSTRIAL ACCIDENT BOARD—CONCLUSIVENESS.

The findings of the industrial accident board, in the absence of fraud, are conclusive, if there is evidence to support them.

2. SAME—EVIDENCE—SUFFICIENCY.

Testimony that plaintiff's decedent, when injured, was an employee rather than an independent contractor, and that he was injured while in the course of his employment, *held*, sufficient to sustain the findings of the board.

3. SAME—INSURANCE—LIABILITY OF INSURER.

Where the compensation insurer of a lumber company accepted, by an indorsement on the policy, as within its terms, without any restriction, the employees of a subcontractor of said lumber company, and said subcontractor returned his entire pay roll, including employees not employed on said subcontract, and paid premiums thereon, his policy of insurance covered all of his employees, although the lumber company and the insurer were not aware that he had employees other than those employed on said subcontract.

Certiorari to Industrial Accident Board. Submit-

Independent contractors and employees of subcontractors as employees within the meaning of workmen's compensation acts, see notes in L. R. A. 1916A, pp. 118 and 247, L. R. A. 1917D, 148, and L. R. A. 1918F, 206.

ted October 14, 1919. (Docket No. 35.) Decided December 22, 1919. Rehearing denied April 10, 1920.

Caroline Brown presented her claim for compensation against George W. Bouschor and the Consolidated Lumber Company for the accidental death of her husband in defendant Bouschor's employ. From an order awarding compensation, the Lumbermen's Mutual Casualty Company, insurer, brings certiorari. Affirmed.

*Nichols & Nichols* (*A. R. Locke* and *J. T. Haviland,* of counsel), for appellant.

*Gottfrid S. Johnson,* for appellee Brown.

*Virgil I. Hixson,* for appellee Bouschor.

MOORE, J. This is certiorari to review an award made by the industrial accident board, upon the application of Mrs. Brown, growing out of the death of her husband while he was, as she claims, in the employ of the defendant Bouschor. Following the accident to Mr. Brown and his death as the result thereof, a settlement was made under a misapprehension of facts, which proceedings are not important as related to the vital questions in this case, and while we have carefully read all that is said in the record and briefs upon this phase of the case, we shall not refer to it except incidentally.

Caroline Brown, widow of William Brown, on July 10, 1918, filed an application with the industrial accident board asking for compensation as a dependent and made George W. Bouschor, the Consolidated Lumber Company, the London Guarantee & Accident Company, Limited, and the appellant, respondents, and asked for compensation on account of the death of her husband, William Brown, caused by the injury said to have resulted through the accident on the 18th day of December, 1917. The appellant denied liability,

claiming that Mr. Brown, when injured, was working as an independent contractor; that he was not injured while employed by any of the parties to the proceeding; that he was not in the employ of the Consolidated Lumber Company when injured, and did not receive the injury arising out of and in the scope of his employment. An arbitration was had upon such petition and an award made in which it was decided that the London Guarantee & Accident Company and the Consolidated Lumber Company were not liable, but that George W. Bouschor and this appellant were liable to the claimant in the sum of $2,940, which should be paid at the rate of $10 per week, and $33 to Andrew Nelson, the attending physician. The appellant appealed to the industrial accident board for review and urged the same defenses it urged before the arbitration committee, and claimed that the industrial accident board was without jurisdiction in the matter as to the Lumbermen's Mutual Casualty Company, for the reason that the said company had never had its certificate of insurance covering the said George W. Bouschor approved by the industrial accident board, and that unless a certificate was filed in accordance with the rules of the board it had no jurisdiction over the company or the subject-matter; and that the industrial accident board had no jurisdiction to construe the terms and conditions of an insurance contract between the insurance company and employer; and that the finding of the weekly wages of $20 per week was not supported by the evidence, as well as the finding that the appellant was liable for the medical services of Dr. Nelson. The industrial accident board affirmed the award of the arbitration committee.

We quote from the brief of counsel:

"(1) Did the industrial accident board have jurisdiction over the parties and subject-matter?

"The first question to be determined is whether the

industrial accident board had any jurisdiction in this case at all. By rule and statute, three things are necessary to give the board jurisdiction over all parties, viz., the employer and employee and any insurance company of the employer, they are:

"(*a*) The employer's written notice to the board that he has elected to come under the act with the statement of the method of payment of compensation that he desires to adopt or has adopted.

"(*b*) The certificate from the insurance company that it has taken over the risk.

"(*c*) The approval of the industrial accident board.

"These things are essential and jurisdictional, and in no other way can the board know that the employer is complying with the act and until that is done and the approval of the board indorsed and made a part of the record, the employer is not under the act and the board has no jurisdiction over him or his employees. *Bernard* v. *Traction Co.*, 188 Mich. 504; *Shevchenko* v. *Railway*, 189 Mich. 421; *Bendykson* v. *Evangelistic Committee*, 195 Mich. 490."

An examination of these cases will show they are readily distinguishable. In each of them the employers' determination to come under the act had not been approved by the industrial accident board when the injury for which compensation was asked occurred. In this case on the 20th of May, 1916, Mr. Bouschor filed with the industrial accident board his written acceptance as an employer, stating that his method of providing payment was through the London Guarantee & Accident Company. This acceptance was duly approved by the board May 20, 1916, while the accident to Mr. Brown occurred on the 18th day of December, 1917.

It is the further claim that Mr. Brown was not an employee but was an independent contractor. It is also claimed that it is not clearly shown that he was hurt while in the course of his employment. There is testimony tending to sustain the contention of the claimant in both of these respects. We have repeat-

edly held that the findings of fact made by the industrial accident board are, in the absence of fraud, conclusive, if there is evidence to support them: Section 12, part 3, compensation law (2 Comp. Laws 1915, § 5465); *Meyers* v. *Railroad Co.*, 199 Mich. 134; *Homan* v. *Power Co.*, 200 Mich. 206; *Jacobs* v. *Glasser & Hoffman*, 200 Mich. 473; *Nagy* v. *Solvay Process Co.*, 201 Mich. 158; *Perdew* v. *Nufer Cedar Co.*, 201 Mich. 520; *Wilson* v. *Furniture Co.*, 201 Mich. 531; *Malone* v. *Railway*, 202 Mich. 136; *Gabriel* v. *Construction Co.*, 206 Mich. 471; *Shaffer* v. *D'Arcy Spring Co.*, 206 Mich. 483. There was evidence that Mr. Brown was an employee and that he was hurt in the course of his employment.

The meritorious question about which there can be serious controversy is whether the insurance undertaking of the appellant, the Lumbermen's Mutual Casualty Company, covered William Brown at the time he received his injury which later resulted in his death. The defendant Bouschor was a subcontractor under the Consolidated Lumber Company. His contract with that company required him to carry liability insurance so that if any injury occurred to his employees the Consolidated Lumber Company should not suffer any loss because of said injury. Mr. Bouschor was not only a subcontractor as above indicated but he carried on lumbering operations of his own in which he employed men. After entering upon his contract with the Consolidated Lumber Company he obtained liability insurance from various sources, but for reasons which it is not necessary to detail now he found himself without liability insurance. The Consolidated Lumber Company had insurance in the Lumbermen's Mutual Casualty Company.

Mr. Bouschor testified in part:

"*Q.* Now I note this, Mr. Bouschor, that you state 'Method of providing for compensation adopted by the

undersigned, Consolidated Lumber Company and Lumbermen's Mutual Casualty Company.' Did you think that the Consolidated Lumber Company could be your insurer in that case?

"*A.* Yes.

"*Q.* You thought they would guarantee your insurance?

"*A.* Yes, I figured I had to have insurance and when the insurance company withdrew from me, I went to them.

"*Q.* You went to the Consolidated Lumber Company?

"*A.* Yes, sir.

"*Q.* Are they a local lumber company here?

"*A.* Yes.

"*Q.* Of some considerable size?

"*A.* Yes.

"*Q.* Is it true, Mr. Bouschor, that you have dealt with them, on and off for years, selling your products to them or working for them?

"*A.* Yes, sir, for years.

"*Q.* When you wanted insurance, you after having a little trouble about getting it went to the Consolidated Lumber Company?

"*A.* Why, yes, their contract with me as a jobber states that I shall carry insurance and they claimed that they could carry the insurance you know.

"*Q.* For you?

"*A.* Yes, for me.

"*Q.* And you went to them about it?

"*A.* Of course I went to them when the other company withdrew and I wanted them to carry my insurance and they said they could and would carry it.

"*Q.* The Consolidated Lumber Company?

"*A.* Yes, sir.

"*Q.* On their policy?

"*A.* Yes.

"*Q.* Now, is this correct, Mr. Bouschor, that when you went to them they and you agreed that they would have their policy fixed so that it would insure you, too?

"*A.* Yes, sir.

"*Q.* Was it your understanding that they had a policy with some insurance company?

"*A.* Yes, sir.

"*Q.* Lumbermen's Mutual Casualty Company?

"*A.* Yes, sir.

"*Q.* And so, from about the 5th of June, 1917, it was your understanding that the Lumbermen's Mutual Casualty Company covered your employees, was it?

"*A.* No, from February 8, 1917.

"*Q.* Well, I notice, Mr. Bouschor, that on this Exhibit I, it is dated the 16th day of April, 1917, was it your understanding that you were covered before that date?

"*A.* Yes, that was when it was.

"*Q.* That was when you signed the papers?

"*A.* Yes, sir."

The result of the conversation between Mr. Bouschor and the manager of the Consolidated Lumber Company was that there was indorsed on the policy which the lumber company had, the following:

"The policy to which this indorsement is attached in so far as said policy applies to the classification of 'Logging operations, including loading and unloading logs on and from cars, river driving, sorting and booming except at sawmill' is hereby extended in all its terms and conditions to include George W. Bouschor as an assured thereunder.   *   *   *

"Subject in all other respects to all the agreements, general conditions, special conditions and warranties of this policy:

"This indorsement when signed by an executive officer of the company and attached to policy No. 214,-444, issued to the Consolidated Lumber Company of Manistique, Michigan, shall be valid and shall form part of said policy.

"Dated at Manistique, Michigan, December 31, 1916.

"LUMBERMEN'S MUTUAL CASUALTY COMPANY,

"JAS. S. KEMPER, Manager."

Following this indorsement a letter was sent reading in part as follows:

"INDUSTRIAL ACCIDENT BOARD,

"Lansing, Michigan.

"*Gentlemen:*

"Consolidated Lumber Company.

"We hand you herewith Employer's Written Acceptance, executed by the following logging contractors

who are subcontractors for the Consolidated Lumber Company of Manistique, Michigan, whose Workmen's Compensation Insurance we are carrying under our policies No. 214443 and No. 214444: Peter Golden, Fred LaBombard, Ray Graves, Paul Knuth, G. W. Bouschor and Frank Jones.

"Yours very truly,
"LUMBERMEN'S MUTUAL CASUALTY COMPANY,
"JAS. S. KEMPER, Manager."

Inclosed with that letter was the following:

"EMPLOYER'S WRITTEN ACCEPTANCE.
"Act No. 10, Public Acts, Extra Session 1912.
"INDUSTRIAL ACCIDENT BOARD,
"Lansing, Mich.
"Take notice that the undersigned employer of labor in Michigan accepts the provisions of Act No. 10 of the Public Acts, Extra Session 1912.
"Number of employees—25.
"Location of place of employment—Manistique and vicinity.
"Nature of employment—logging contractor.
"Method of providing for compensation adopted by the undersigned—Consolidated Lumber Company and Lumbermen's Mutual Casualty Company.
"Dated at Manistique, Michigan, this sixteenth day of April, 1917.

"G. W. BOUSCHOR."

Upon that acceptance appears a stamp "Received June 5th, 1917. Industrial Accident Board, Lansing, Michigan," and that paper is also stamped duplicate, but it bears no approval stamp.

The claim of the insurance company is tersely stated by counsel as follows:

"So we have this situation: The indorsement was made upon the policy of the Consolidated Lumber Company and the Lumbermen's Mutual Casualty Company accepted its provisions because it understood, and had a right to understand, as provided in the contract between the Consolidated Lumber Company and Bouschor, that it was providing a method of compensation for the employees of Bouschor while engaged in any of the employments enumerated 'upon this operation,'

and 'this operation' is found to mean the making into various merchantable products called for by the specifications included in the agreement all of the merchantable timber and other forest products standing, lying and being upon certain described lands, as above stated, and when the pay roll came to the Consolidated Lumber Company with Brown's name thereon, it had a right to believe and did believe that his work had reference to the operations upon the premises so described, and when the report reached the casualty company that Bouschor had paid $2,515.74 to his employees, it understood, and had a right to understand, that it was the employees 'in this operation' or those men who were working on the premises described and not an employee working for Brown ten miles from there as an independent contractor upon an entirely different job.

"In the very outset we must get away from the proposition that there is any attempt to modify, alter, extend or limit the terms of the contract, but that testimony is admissible to show how and why the contract was entered into and what were the facts upon which the consideration as to both parties was based. In other words, the intent of the parties in making it.

"An examination of the authorities warrants us in stating that under these conditions the court may and ought to examine the testimony referred to for the purpose of determining what was the intent of the parties for, as stated in many cases, that intent must govern when not in absolute conflict with the unambiguous, plain and clear terms of the writing." Counsel cite many authorities.

The testimony is persuasive that the manager of the Consolidated Lumber Company and the insurance company did not know that Mr. Bouschor had other employees than those employed by him as subcontractor. They made no inquiries in that respect. If they had they undoubtedly would have learned that a very substantial proportion of his employees were not at work upon the subcontracts he had with the Consolidated Lumber Company, and among them was William Brown when he was hurt.

The evidence is clear that Mr. Bouschor was seeking insurance that would cover all his liability as an employer of labor and that he supposed he had obtained such insurance by the indorsement made upon the policy as before stated. From that time he returned to the lumber company monthly his entire pay roll, including all his employees on all his work, and paid the insurance premium on all of these men to the Consolidated Lumber Company, which in turn forwarded the premiums to the insurance company, which company retained the premiums and it was not until the hearing before the industrial accident board was well under way that an attempt was made to tender back these premiums to Mr. Bouschor, who refused to receive them. There is nothing ambiguous in the language used in the indorsement made by the insurance company upon the policy. Had it desired to limit the insurance so it would cover only such employees of Mr. Bouschor as were engaged in the work he was doing for the Consolidated Lumber Company it would have been easy to have so stated in the writing.

In the employer's liability law is the following:

"Every contract for the insurance of the compensation herein provided for, or against liability therefor, shall be deemed to be made subject to the provisions of this act, and provisions thereof inconsistent with this act shall be void." * * * 2 Comp. Laws 1915, § 5475.

In *Utter* v. *Insurance Co.*, 65 Mich. 545, Justice MORSE, speaking for the court, said:

"When a stipulation or exception to a policy of insurance, emanating from the insurers, is capable of two meanings, the one is to be adopted which is the most favorable to the insured. 1 May on Insurance, §§ 174, 175; 1 Wood on Insurance (2d Ed.), §§ 60, 62; *Allen* v. *Insurance Co.*, 85 N. Y. 473."

In the case of *Grand Rapids Electric Light & Power Co.* v. *Casualty Co.*, 111 Mich. 148, Chief Justice LONG, speaking for the court, said:

"In *Anderson* v. *Fitzgerald*, 4 H. L. Cas. 484, in speaking of the policy in that case, it was said:

" 'It ought to be framed with such deliberate care that no form of expression by which, on the one hand, the party assured can be caught, or by which, on the other, the company can be cheated, shall be found upon the face of it.'

"In *National Bank* v. *Insurance Co.*, 95 U. S. 673, speaking of the policy in that case and the rule here stated, the court said:

" 'The company cannot justly complain of such a rule. Its attorneys, officers, or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the rights of the assured under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself.'

"We think the court below was correct in its interpretation of the policy, and the judgment must be affirmed."

In *Turner* v. *Casualty Co.*, 112 Mich. 425 (38 L. R. A. 529), Chief Justice LONG, speaking for the court, said:

"If this language in the policy is ambiguous and susceptible of two constructions, then the question must be solved in favor of the insured; for it is well settled in this State that where a stipulation or exception to a policy, emanating from the insurer, is capable of two meanings, the one is to be adopted which is the most favorable to the insured; that it ought to be framed with such deliberate care that no form of expression by which, on the one hand, the party insured can be caught, or by which, on the other, the company can be cheated, should be found on the face of it. *Utter* v. *Insurance Co.*, 65 Mich. 545 (8 Am. St. Rep. 913) ; *Grand Rapids Electric Light & Power Co.* v. *Casualty Co.*, 111 Mich. 148."

In the instant case Mr. Bouschor made no misrepresentations. He was not asked to disclose anything that he did not disclose. He desired liability insurance that would protect him under the employers' liability law, as to all his employees. He supposed he was getting that kind of insurance and he paid premiums upon that basis. We think it too late now for the insurance company to avail itself of the defense it is urging.

The award is affirmed with costs.

BIRD, C. J., and SHARPE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.