PIECZYNSKI v. BRUNSWICK, BALKE, COLLENDER COMPANY.

1. Workmen's Compensation — Recurrent Hernia — Proximate Cause—Evidence.

Testimony of physician who had performed herniotomy on plaintiff in August of 1945 to repair left femoral hernia she had theretofore sustained while lifting 75-pound fuel cells, that upon examination over 4 years later he found plaintiff had sustained a recurrent hernia at the same site, that there was no history of any subsequent injury or strain; that hernias may recur spontaneously and that plaintiff was disabled from returning to common labor in factory employment *held*, sufficient to support finding of workmen's compensation commission that plaintiff was entitled to an award against defendant employer and its insurer for further compensation, notwithstanding plaintiff had not worked for defendant since herniotomy had been performed, such finding being based upon a causal relationship between the original injury, the ensuing herniotomy and plaintiff's present hernia (CL 1948, § 413.14).

References for Points in Headnotes

[1, 3, 4]  58 Am Jur, Workmen's Compensation §§ 255, 278, 279, 501.
[1, 3, 4]  Hernia as result of sudden strain as accident or accidental injury within workmen's compensation act.  98 ALR 205.
Workmen's compensation: Time and jurisdiction for review, reopening, modification, or reinstatement of award or agreement. 165 ALR 9.

2. SAME—OCCUPATIONAL DISEASE AMENDMENT—HERNIA OTHERWISE
   COMPENSABLE.

> The occupational disease amendment to the workmen's compensation act does not preclude an award to an employee who suffers a hernia compensable under other provisions of the act (CL 1948, § 417.12).

3. SAME—HERNIA—BREAKDOWN OF REPAIR—FURTHER COMPENSATION.

> A breakdown of the repair of a former hernia is not a new hernia, but is a disablement directly attributable to the original hernia for which further compensation should be awarded (CL 1948, § 413. 14).

4. SAME—OPERATION—UNSUCCESSFUL REPAIR—FURTHER COMPENSATION.

> One who undergoes an operation as contemplated by the workmen's compensation act and later suffers as a result of the unsuccessful repair, though not necessarily the failure, of that operation, should receive workmen's compensation therefor (CL 1948, § 413.14).

Appeal from Workmen's Compensation Commission. Submitted October 9, 1952. (Docket No. 31, Calendar No. 45,527.) Decided December 9, 1952.

Alberta M. Pieczynski presented her claim for compensation against Brunswick, Balke, Collender Company, employer, and American Guarantee Insurance Company, insurer, for recurring hernia. Award to plaintiff. Defendants appeal. Affirmed.

*Marcus, Kelman, Loria, McCroskey & Finucan,* for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*William A. Perkins* and *Stanley Cheff,* of counsel), for defendants.

BUSHNELL, J. This is an appeal by the defendant employer and its insurer from an award in a hernia case. The principal question presented may be stated as follows: Is there any competent evidence

to support the finding of the workmen's compensation commission that plaintiff's present hernia, which developed while working for a new and different employer, is of the recurrent type, and, therefore, related to the original hernia which she suffered while in the employ of defendant company? Another necessary question is whether the former employer who provided a herniotomy is required to pay compensation when the hernia recurs.

The only witnesses before the commission were Alberta M. Pieczynski, the plaintiff, Dr. Charles A. Teifer, the plant physician for defendant Brunswick, Balke, Collender Company, and an attendant in the office of the surgeon who performed a hysterectomy in December, 1949. On June 8, 1944, Mrs. Pieczynski felt a "sharp catch" in her left side while she was lifting fuel cells, weighing about 75 pounds, to a work bench. She was examined by Dr. Teifer and given heat treatments for the supposed strain. After 6 or 8 months, when she was transferred to another department, her side began to bother her. She was again examined by Dr. Teifer, who then told her she had a hernia. She nevertheless continued to work until she was laid off on August 20, 1945, when defendant reduced its working force. The next day she was admitted to the hospital, where Dr. Teifer performed an operation described by him as the surgical repair of a left femoral hernia. She was paid compensation for 8 weeks. She was discharged from the hospital, as being able to work, on September 24, 1945. No work was then available for her at defendant's plant, and she looked elsewhere. In April of 1946, she obtained employment at the Michigan Theatre Building in Muskegon as an office janitress. This work required her to scrub floors and carry pails of water. About a month later she experienced pain in her left side at the site of the herniotomy. Six months later she noticed a pro-

.trusion and consulted her own physician, Dr. Wilson. She immediately reported Dr. Wilson's findings to the nurse in defendant's first-aid department. Plaintiff continued to work at her cleaning job. No question is raised regarding the time which elapsed before plaintiff's claim for compensation was filed.

The commission, on review, reversed the deputy and found a "causal relationship between the original injury and the herniotomy which followed that injury and plaintiff's present hernia." It further found that Mrs. Pieczynski was partially disabled and entitled to compensation. Defendant insists that the present disability is unrelated to the original hernia, which had been so completely repaired by Dr. Teifer, that it no longer existed. Defendant argues that the present hernia is a new one which developed while plaintiff was working for another employer, and that it is not a recurrence of the old hernia.

Dr. Teifer testified on cross-examination, in part, as follows:

"*Q.* To refresh your recollection, she was next referred to you by—

"*A.* October 16, 1950.

"*Q.* She was referred to you by the defendants for examination after she had filed claim for recurrent hernia. Now will you give us the results of your examination?

"*A.* Let's see, she had a swelling in the left inguinal region at that time, which showed that she had a recurrence of the femoral hernia.

"*Q.* Did she give you any history of any subsequent injury or strain?

"*A.* Well, I can read what I have here.

"*Q.* All right, sir.

"*A.* About 4 years ago, noticed a dull pain. Then a short time later, swelling in the left inguinal region. She was operated upon August 21, 1945. She did not return to work at the Brunswick. Was

laid off.  Did not work for 5 months.  Then started to work at the Michigan Theater Company office at a job of cleaning.  She has worked there to date.  That is October 16, 1950.  An examination showed a recurrent left femoral hernia about 2 1/2 inches in diameter.

"*Q.* By 'recurrent hernia', do you mean that the original hernia has now re-occurred, doctor?

"*A.* Yes.  That is at the site of the original hernia.

"*Q.* Do you find in that history or from your examination any new causes for the recurrence of this hernia, anything that might independently cause the recurrence of this hernia?

"*A.* Not in that history, no.

"*Q.* Is it true, doctor, that in a certain percentage of hernia repairs that you do have spontaneous recurrence?

"*A.* That is in some, yes.

"*Q.* Isn't it true, doctor, that in some cases the ordinary wear and tear of daily living may cause the hernia to re-occur?

"*A.* Yes.

"*Q.* Is it necessary to have any definite strain?

"*A.* Generally a strain of some sort.

"*Q.* A strain of some sort may do it?

"*A.* Yes.

"*Q.* That isn't necessary, is it, doctor?

"*A.* I would say practically in every case a strain is necessary.

"*Q.* The strain of ordinary work?

"*A.* Or unusual lifting.

"*Q.* Either one or the other?

"*A.* Or severe coughing.

"*Q.* When do you call it a recurrent hernia and when do you call it new?

"*A.* A new hernia is one that has never been operated upon before.

"*Q.* Or even though a person has a hernia, if it is at a different site, that would be a new hernia?

"*A.* Yes.

"*Q.* This is at the same site?

"*A.* Yes.

"*Q.* Now in your opinion, is the woman disabled from returning to factory employment where she engaged in common labor?

"*A.* She might do light work but she would be rejected on the physical examination."

In the foregoing testimony there is sufficient competent evidence to support the finding of the commission and to sustain its award.

The Court in *Barclay* v. *General Motors Corp.*, 309 Mich 534, refused to hold that a recent aggravation of a preexisting hernia, which causes total disability, is compensable. Mr. Justice Wiest said in that case: "A recurrent hernia is not a hernia of recent origin." He proposed that the denial of an award be affirmed. Chief Justice North, with whom 4 members of the Court joined in concurring in affirmance, said:

"It follows that plaintiff is not entitled to compensation because his hernia was not 'clearly recent in origin' as required by the statute."

It was apparently for this reason that the Chief Justice and the other 4 justices concurred with Mr. Justice Wiest in affirmance of the denial of the award. The *Barclay Case* involved a hernia which became disabling in 1942, 7 years after Barclay began his employment in 1935. The record showed some indication that Barclay had a hernia in 1931, and that in 1936 he sustained a left inguinal hernia, which was repaired. The employer's physician stated that the hernia he examined in 1942 was "so large that it practically obliterated the scrotum," and that, in his opinion, the hernia "had been there for several years, 4 or 5 years, maybe longer." It is in these respects that the facts in the *Barclay Case* differ from those in the instant case.

In *Hargrove* v. *Ford Motor Co.,* 313 Mich 199, the employee was found to have a bilateral hernia when he was rehired on September 15, 1938.   On May 30, 1944, while testing motors he slipped, fell, and aggravated the preexisting, but nondisabling, hernia.   The *Barclay Case* was discussed in the *Hargrove* opinion. The facts were distinguished and an award based on an accidental injury (slipping and falling) in 1944 was unanimously affirmed.   The Court held that there was nothing in the amendment to section 12 of part 7 of the workmen's compensation law (CL 1948, § 417.12 [Stat Ann 1950 Rev § 17.230(1)]), which precluded the award of compensation under the facts stated.

Mr. Justice Reid, speaking for all participating justices, said in *McHan* v. *Bohn Aluminum & Brass Corp.,* 315 Mich 176, that each case must be decided on its own merits.   In the *McHan Case* the plaintiff had incurred a hernia while she was employed at the Pine Bluff Arsenal, at Pine Bluff, Arkansas, and had a herniotomy on February 10, 1944.   She had previously had an appendectomy in 1939.   The hernia was on the lower portion of the scar left by the appendectomy.   In December of 1944 the plaintiff, while in the employ of Bohn, incurred a hernia when lifting boxes.   The commission determined that the hernia was a new one, clearly recent in origin, and awarded compensation.   In the *McHan Case* defendant relied upon *Barclay* v. *General Motors Corp., supra,* and necessarily the opinion of the Court in that case was discussed.   The Court said, however, in the *McHan Case:*

"In *Hargrove* v. *Ford Motor Co.,* 313 Mich 199, at p 201, there is a partial construction of the opinion in the *Barclay Case.*   While it is stated in the *Hargrove Case* that in the *Barclay Case* 'the Court held that a recurrent hernia is not a hernia of recent

origin' and therefore compensation was denied, that statement is not strictly accurate. Instead, decision in the *Barclay Case* did not turn upon whether the hernia was or was not a so-called recurrent hernia, but decision was based solely on the fact that Barclay's hernia was not of recent origin.

"In the *Barclay Case* the old hernia had continued to protrude up to the time of the disablement, while in the instant case there had been no continuing protrusion, until the hernia on December 27, 1944. Dr. Jarzynka testified that upon examination on December 28, 1944, he found a hernia of the lower end of the incisional scar from a previous herniotomy and appendectomy, that the scar was somewhat longer and wider than a scar which would have resulted from a herniotomy alone. Dr. Jarzynka's opinion that this was a recurrent hernia was based upon the shortness of time that had elapsed since the herniotomy, the flabby abdominal wall of this particular individual, and the occurrence of the break-through in the herniotomy incision itself, which in turn was seated squarely in the prior appendectomy incision."

It thus appears that the situation in the instant case differs from those in the *Barclay, Hargrove* and *McHan Cases.* Here, plaintiff may have had a claim against her present employer, but she preferred to stand on the liability of her former employer. The testimony of Dr. Teifer indicates that, although it is true that sometimes the ordinary wear and tear of daily living may cause a hernia to recur, it is also true that in a certain percentage of hernia repairs there may be spontaneous recurrence. The compensation act provides for further compensation. (CL 1948, § 413.14 [Stat Ann 1950 Rev § 17.188]).

A breakdown of the repair of a former hernia is not a new hernia, but is a disablement directly attributable to the original hernia for which further compensation should be awarded. Such an award is not precluded by the *McHan Case,* which was an

award for a new hernia, clearly recent in origin.  Employees should not be shuttled back and forth from one employer to another, as is attempted in the instant case.  If claim had been made against the present employer, the defense would be made that the former employer alone was liable.  One who undergoes an operation as contemplated by statute, and later suffers as a result of the unsuccessful repair, though not necessarily the failure, of that operation, should be compensated.

The award of the commission is affirmed, with costs to appellee.

Adams, C. J., and Dethmers, Butzel, Carr, Sharpe, and Reid, JJ., concurred with Bushnell, J.

Boyles, J., concurred in the result.