PERDEW v. NUFER CEDAR CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—COURSE OF EMPLOYMENT—MISTAKE—ADMISSIONS.
     In proceedings under the workmen's compensation act, where defendant's report of the accident to the industrial accident board was made under a misapprehension of the facts, but after learning the actual facts it entered into a contract with the employee for compensation, continuing in the agreement the cause of the accident set forth in the report, *held*, that the board was justified in treating such action as an admission that the accident arose in the course of deceased's employment.

2. SAME—COURSE OF EMPLOYMENT.
     Where deceased, a fireman in defendant's employ, with other employees, worked overtime in an effort to get the new factory started, the overtime work being different from the day work, evidence that the employees turned in and helped each other, and that deceased, on the night of the accident, first helped the blacksmith until his job was completed, and then helped another employee, when he received his injury, *held*, sufficient to sustain a finding of the board that the accident arose out of deceased's employment.

3. SAME—EVIDENCE—EXPERT WITNESSES—FINDING OF BOARD—CONCLUSIVENESS.
     Where the finding of the industrial accident board that an

See notes in L. R. A. 1916A, 23; L. R. A. 1917D, 80.

accident to deceased while in defendant's employ was the cause of his death was supported by the testimony of one of the attending physicians, although disputed by another physician, such finding, in the absence of fraud, is conclusive, the board being the judge of the credibility of the witnesses, medical as well as lay.

Certiorari to Industrial Accident Board. Submitted April 16, 1918. (Docket No. 89.) Decided June 3, 1918.

Lettie Perdew presented her claim for compensation against the Nufer Cedar Company for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*Ball & Garvin (Thomas, Shields & Silsbee,* of counsel), for appellant.

*Myron H. Walker,* for appellee.

Plaintiff is the widow and dependent of James K. Perdew. For a number of years next preceding his death Mr. Perdew was in the employ of defendant as fireman. Its plant had been located at Whitehall, but shortly before the accident it erected a plant at Marquette. Mr. Perdew and other employees went there with the company. The record fairly discloses that although the plant was operated daytimes the details of its installation were not fully completed, and some of the employees worked evenings getting it in shape for efficient operation. Deceased was one of those so working on the evening of Thursday, October 26, 1916. That evening he worked in the blacksmith shop on a defective valve until nearly ten. Another workman, named Kittridge, also worked that evening; he was repairing a chain to the conveyor in another building. They were boarding at the same place as their families had not moved to Marquette. After de-

ceased had finished his work on the defective valve he went to the building where Kittridge was working. Kittridge had not quite finished his work and deceased turned in to help him. In helping to fasten the links of the chain together he pinched his finger, causing a blister to form. Sunday evening following, deceased developed considerable fever and a physician was called. It appeared that infection had resulted and deceased was sent to the hospital the following day. Four successive operations were had for the removal of pus; a recurrence of pus accumulation having resulted after each of the first three. It was thought the fourth was successful as the incision granulated and healed. He remained at the hospital until December 15th. December 19th another doctor was called and he found him suffering from acute inflammatory rheumatism, and directed his return to the hospital, where he remained until his death, December 29th.

On November 13th defendant, by its second vice-president, reported the accident to the industrial accident board, giving the cause of the accident as "slight burn." On December 4th, the same officer, acting for the company, entered into an agreement for compensation with deceased, said agreement stating "injured man was burned while at his work," etc., and compensation was paid deceased under this agreement for four weeks. After his death, plaintiff made claim for compensation under the terms of the act, resulting in an award to her by the committee of arbitration and the full board.

FELLOWS, J. (after stating the facts). It is first urged that the accident to deceased was not received in the course of his employment; that what deceased did was to assist his fellow workman complete his job so that they could go home together; that he was engaged in a friendly act outside his employment; and

that the case falls within *Spooner* v. *Detroit Saturday Night Co.,* 187 Mich. 125, and kindred cases. There is much testimony to support this theory of the defendant, but there is also testimony in conflict with it. The board seems to have placed considerable reliance on the report of the accident made by defendant to it. *Reck* v. *Whittlesberger,* 181 Mich. 463. Defendant insists that this report was made under a misapprehension of the facts, and that inasmuch as it is established undisputedly that the accident did not occur as therein stated, but is admitted and proved to have happened in another way, the report should be given no force. It is unnecessary for us to determine whether, under the circumstances and the admitted facts, any force should be given this report, because it appears from the testimony of the officer who made it, and who also executed the agreement for compensation, that he visited the deceased at the hospital before he executed the agreement and then learned the manner in which deceased received the accident. When he entered into the agreement he did so under no misapprehension, but with full knowledge of the actual facts, but continued in the agreement the cause of accident set forth in the report; he says:

"But while our reports had been on account of burn we did not change the report, we just made it out that way. Thought it was burn in the first place and continued that way."

It is highly probable that he then regarded his company liable under the actual facts of the accident, which were then known to him. This admitted liability for the accident and agreement to pay compensation was before the board, and it had the right to treat it as an admission that the accident arose in the course of deceased's employment. *Estate of Beckwith* v. *Spooner,* 183 Mich. 323; *Brown* v. *George A. Fuller Co.,* 197 Mich. 1.

But there was affirmative proof from the witness Kittridge that they were all at work getting the factory started, and that "it was the custom, and if one got finished first he would turn in and help the other." Deceased worked during the hours the plant was running as fireman, but the evening work was such as was incident to getting the new plant in successful 'operation, and on this particular occasion deceased had been helping the blacksmith; the men who worked nights were apparently old employees and were trusted to turn in their own time.

When we take into consideration that the company, with full knowledge of the circumstances of the accident, entered into an agreement for compensation; that the men were all helping to get the new factory started, and working overtime with this object in view; the testimony of Mr. Kittridge, as to the custom of turning in and helping each other; the fact that deceased first helped the blacksmith until his job was completed, and then helped Kittridge until his job was finished; when these things are all considered, with the surrounding circumstances, we cannot say that there was no testimony before the board that the accident arose out of deceased's employment.

Defendant also insists that the accident was not the cause of the death and therefore it is not liable. But upon this branch of the case there is a sharp conflict between the testimony of the physcians. The one who performed the four operations and the one assisting in three of them seem quite positive in their belief that the fourth operation entirely eradicated all infection from the patient's system, and that his death from rheumatism was the result of the recurrence of that disease with which he had been afflicted on occasions before the accident. On the other hand, the physician who treated him during the last ten days of his life was of the opinion that the rheumatism

was caused from a secondary infection as the result of the local one, and that the death was the direct result of the injury and the resulting infection. Each of the physicians supports his theory with considerable plausibility. The industrial accident board was the trier of the facts. Its findings of fact, if supported by any competent testimony, is conclusive in the absence of fraud. It is the judge of the credibility of witnesses, medical as well as lay. *Deem* v. *Paper Co.*, 189 Mich. 655; *Vogeley* v. *Lumber Co.*, 196 Mich. 516; *Homan* v. *Power Co.*, 200 Mich. 206. The instant case upon this question is not dissimilar to these cases, nor to *Fitzgerald* v. *Motor Co.*, 187 Mich. 660; *Dove* v. *Leather Co.*, 198 Mich. 132; *Blaess* v. *Dolph*, 195 Mich. 137; *Grove* v. *Paper Co.*, 184 Mich. 449.

We find no reason to disturb the award and it is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.