HENRY WEGIMONT *vs.* ARGONNE WORSTED COMPANY.

JULY 19, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This cause is before us on the respondent's appeal from a decree, entered in the superior court, granting the petitioner both general and specific compensation under the workmen's compensation act, general laws 1938, chapter 300.

According to the testimony of respondent's assistant superintendent and master mechanic, the petitioner was hired by the respondent in 1936 "as a painter and maintenance man; in other words, to help out the carpenter and all-around labor work". The petitioner testified that he did "all different kinds of work" and that he was a handy man and helped out the carpenter, mason and painter.

On the date of the accident, February 24, 1941, after having his lunch, petitioner punched the time clock at 1 p. m. and was returning by the shortest route through the mill toward the card room, where he had been painting and working in the forenoon on storm windows and helping the carpenter. As he was walking past the cutting room, which was separated from the passageway by a wooden railing three feet high, he could not help but see the yarn cutting machine which later caused his injuries. This machine was in the cutting room and only about five or six feet from where the petitioner momentarily had stopped to discuss some work with the carpenter. The machine itself was about three and a half feet wide by six feet long and included two knives about eighteen inches long. The top knife operated up and down in a vertical plane coming down against the lower one as on a chopping block, thus cutting off yarn in desired lengths. Petitioner testified that he noticed the yarn becoming tangled in the roller and blocking up this machine and that he saw the operator running to stop it. Having in mind a conversation, just previously had with this operator concerning earlier criticism by the boss, petitioner voluntarily went inside the cutting room to "help the young fellow to get the machine going so the superintendent wouldn't know that it happened."

Before he arrived at the machine, it had been stopped by the operator, who already was being assisted by another young operator in pulling out the tangled yarn. Without being directed or expressly requested by anybody, the petitioner began to assist in pulling out or tearing off the tangled yarn from the roller. While thus working near the knives,

the machine suddenly was started, perhaps by the assisting operator who may have leaned against the starting lever as he was pulling out some yarn. As a result thereof the whole index finger and the first phalange of the thumb on petitioner's right hand were cut off.

Petitioner was not required to repair or fix machines as part of his work nor had he previously worked in this manner around any machine in the cutting room. The petitioner was not forbidden by anybody to do this kind of work or to be present in this or any other room in the mill; and he violated no rule of the company by going there or by rendering such assistance. The assistant superintendent testified substantially that when a machine breaks down or is clogged something has to be done by somebody to get it going again and the longer it stays out of operation the more money the Argonne Worsted Company loses. He also testified that if the operator cannot resume work because the machine is broken or in need of repairing or fixing, he reports to the foreman who arranges for a mechanic to do the work.

The trial justice found that the petitioner suffered an injury by accident arising out of and in the course of his employment; that at the time he was performing an act in the interest of his employer; that it was an act calculated to reduce damage to the employer's mill; and that at the time an emergency existed and, under the circumstances, the general scope of the petitioner's employment was not confined to that of painter alone. A decree accordingly was entered and it is agreed by the parties that if the petitioner is lawfully entitled to any compensation the amounts thereof as stated in the decree are correct.

The respondent contends, first, that the trial justice erred in all of the above findings and conclusions; and, secondly, that the decree is necessarily erroneous if any one of such findings or conclusions is wrong. In our opinion, the second of these contentions cannot be sustained. If there was competent evidence reasonably to support the finding and

conclusion of the trial justice that petitioner's injury was received by accident arising out of and in the course of his employment, the other findings, even if erroneous, would become immaterial.

The first question, therefore, is whether the petitioner was injured in the performance of work that came reasonably within the scope of his employment. The respondent contends, in substance and effect, that the petitioner was injured in the performance of work which was entirely apart from and beyond the scope of his employment, or of any. work that he had been doing that day or had been in the habit of doing with the knowledge or acquiescence of the respondent; that it was undertaken by him without order or request and was not performed in the interest of his employer but was a voluntary effort of petitioner to assist the operator without any thought of the employer's interest; and therefore that the petitioner was a mere volunteer or officious intermeddler who was not protected by the provisions of the workmen's compensation act. Several cases, mostly from other jurisdictions, have been submitted by the respondent in support of the generally accepted rule that one who is injured in the performance of work that is wholly apart from the scope of his employment is not injured by accident arising out of and in the course of employment as contemplated by workmen's compensation acts. In our opinion, these cases amply support such general rule.

But the decisive question here is whether the work in question was so entirely apart from the scope of petitioner's employment that he must be considered a mere volunteer or officious intermeddler. It is true, according to the evidence, that petitioner had not performed this type of work previously to the knowledge or with the acquiescence of his employer or of anybody in authority; that he was not directed or expressly requested by anybody to render such assistance; and that it was not a part of his work to operate any cutting machine or to repair or fix machines that were broken or out of order.

On the other hand, there is evidence to show that he was not hired to do merely "painting", as respondent contends; that he was never forbidden by anybody to perform the work in question or to render such assistance; and that he was violating no rule of the company in entering the room or performing that service. While neither of the young operators expressly requested any assistance, they accepted it without comment or protest apparently, as petitioner substantially testified, in order to get the machine going, that is, to start production, so that the boss would not know it had been clogged or stopped.

The petitioner clearly was not attempting to operate, repair or fix a broken machine. It had been completely stopped by the operator before petitioner began actually to help by pulling out the tangled yarn from the roller. It is a reasonable inference that there was no increased or unusual danger so long as the machine was at rest. Only the sudden and inadvertent starting of the machine by some cause not identified with the petitioner or his own act rendered it dangerous.

While petitioner usually had performed work that was more closely connected with that of a painter, he nevertheless was hired, according to the assistant superintendent and master mechanic, to perform painting and "all-around labor work". The precise limits and details of what was contemplated by "all-around labor work" did not appear clearly. The petitioner testified that he was required to do "all different kinds of work" and that he was a handy man and had helped out the carpenter, mason and painter; and that he was required to go to all parts of the mill, inside and outside, in the performance of his duties. On the other hand, by cross-examination, certain activities clearly were excluded from the scope of his employment, such as the operation of machines or the repairing and fixing of damaged or broken ones. But, as stated, the petitioner when injured was not attempting to operate a machine or to repair or fix any damaged or broken one. He was engaged

simply in an act which apparently required no special skill, and which, in the absence of rule or order to the contrary, could come reasonably within the ordinary meaning of "all-around labor work".

It also appears that the petitioner was not a malicious intermeddler or skylarker; that he was not drunk or in any way serving his own convenience or interest by performing this act; and that his act, though helpful to the operator, was nevertheless, in effect, performed in the interest of respondent. There is evidence that it was performed to get the machine running, that is, to start production. From this and from the testimony of the assistant superintendent, it is reasonable to infer that petitioner's act was calculated to accelerate the resumption of production and thereby was performed in the interest of the respondent.

Under all these circumstances, we think that the evidence here does not require the conclusion, as respondent contends, that the petitioner when injured was a mere volunteer or officious intermeddler. Upon our view there was some evidence to show that the petitioner was injured while performing work that came reasonably within the scope of the general employment for which he was hired, although he previously had not performed that particular kind of service. If this be so, there was some competent evidence to support the trial justice's finding and conclusion that petitioner was injured by an accident arising out of and in the course of his employment and therefore the decree may stand. Because of such conclusion, the other alleged errors in the decision and decree are immaterial and need not be considered.

Respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*John R. Higgins*, for petitioner.

*Sisson, Fletcher & Worrell, Lee A. Worrell*, for respondent.