[Civ. No. 21417. Second Dist., Div. Two. Mar. 23, 1956.]

ARTHUR PAUL SCOTT, a Minor, etc., Appellant, v. PACIFIC COAST BORAX COMPANY (a Corporation) et al., Defendants; BORAX CONSOLIDATED, LTD., Respondent.

174

Hindman & Davis for Appellant.

Dryden, Harrington, Horgan & Swartz, Jacob Swartz and Vernon G. Foster for Respondent.

FOX, J.—The question in this case is whether the circumstances of plaintiff's injury bring compensation therefor under the exclusive jurisdiction of the Industrial Accident Commission. In granting defendant's motion for a nonsuit, the trial court so held. We have concluded that decision is correct.

In 1951, plaintiff, then 16 years of age, began working for defendant on weekends, when needed, in its hotel and coffee shop at Death Valley Junction, in Inyo County. This hamlet is owned exclusively by defendant. It consists of a hotel, coffee shop, store, small first aid station, a gas station and garage, an old, inoperative mill, and eight or ten houses, some of which were occupied by defendant's employees and others were rented. Plaintiff's father, who was an employee of the State Highway Department, resided in one of them. With the arrival of summer, defendant closed its hotel operations. Thus plaintiff's intermittent, part-time employment at the junction was terminated. He did, however, work "a few days" for defendant in August at its Furnace Creek Ranch in Death Valley "colonizing trees and cutting dates and thinning them." After plaintiff resumed school in the fall of 1951 and until May, 1952, when the season ended, he waited on tables and acted as bus boy at defendant's coffee shop on weekends and holidays when needed. But this "wasn't very often."

When school closed the middle of May, 1952, plaintiff went to work in Ash Meadows, Nevada (about 15 miles from Death Valley Junction), for a Mr. McCall, digging clay in the clay pits. He worked there until the middle of July, when he returned home.

Plaintiff was ready to leave on a vacation with his parents in late July, 1952, when Hank Kimbrough, assistant superintendent of all defendant's operations in that area, offered

plaintiff a job at the junction which had formerly been held by Dick Hobbs, who had left. Kimbrough asked plaintiff whether he would work a couple or three days—until they could get somebody—and told him "it would be a good summer job for you to work in the gasoline station . . ." Kimbrough explained he would gather the garbage in the morning, take it to the dump, and then pull the ice, and deliver it to the different iceboxes. The other duties would be to stay around the gas station and service the cars that came in. The hours were from 6 a. m. to 2:30 p. m., with half an hour off at noon for lunch on his own time. Although there was no discussion about wages, plaintiff decided to forego his vacation plans and take the job. He started to work that noon. Plaintiff did the same things that Dick Hobbs had done, except plaintiff did not start the power generator in the morning. This was started by Jim Kennedy, an older employee, who usually got there before plaintiff, who, however, had his own key. Kennedy would be leaving about the time plaintiff arrived for work at the station. Kennedy's regular shift, however, was from 2:30 p. m. to 11 at night. Kennedy acquainted plaintiff with the prices of the items that were for sale in the service station. Plaintiff worked seven days a week but otherwise did not put in any overtime.

On August 15, plaintiff left the job at 2:30 as usual and Kennedy took over. After cashing his paycheck and taking care of some personal matters, plaintiff came back to the station about 3:30 and went into the garage, where he and a friend, Rozzie Fox, started cleaning up and working on an old motor which belonged to a woman who was employed in the coffee shop. This project was unrelated to plaintiff's employment. At approximately 5 o'clock plaintiff and Fox were leaving the garage by the side door to go to Shoshone in an effort to find some needed spare parts for the motor they were working on. Just then Kennedy called to plaintiff and asked him if he "would help him a second." Plaintiff inquired, "Well, how long will it take?" Kennedy replied, "just a minute or two." Kennedy needed plaintiff's assistance in repairing the middle pump in front of the service station. This was an old-fashioned gravity-type gasoline pump with a glass bowl on top and a handle for pumping gasoline. Plaintiff had noticed this pump was leaking some days previously and had mentioned it to Ben Barlow, who was superintendent of defendant's operations in the valley.

Kennedy asked plaintiff "to hold the handle straight so he could tighten the U-bolts up on it." Plaintiff did this, and in not more than a minute Kennedy said: "Well, that does it . . . OK." Plaintiff then stepped back "a couple or three feet." As Rozzie Fox stepped back to get a drink at the fountain which was next to the door of the station, he remarked there was "a lot of gas in the top of that bowl." Kennedy replied, "it won't hurt anything . . . I guess I can let it out." As Kennedy made this remark, plaintiff turned to see what he was doing and observed Kennedy's hand go up to the box and heard a "whirring of the motor and then everything blew apart." At the instant of the explosion plaintiff "was about three feet from the pump on the street [highway] side."

Plaintiff was injured as a result of the explosion and seeks to recover damages for his injuries by this action. The trial court, however, took the view that this was an industral injury and that the authority to fix the compensation therefor was vested exclusively in the Industrial Accident Commission. As a consequence, a judgment of nonsuit was granted, from which plaintiff appeals.

█  "Whenever a court or board is authorized to act upon the existence of a certain state of facts, it has jurisdiction to determine the existence or nonexistence of the requisite facts." (*Palermo Land & Water Co.* v. *Railroad Com.*, 173 Cal. 380, 385 [160 P. 228].) The legal effect of the granting of defendant's motion for a nonsuit was a determination that the superior court was without jurisdiction to grant relief, since the injuries suffered were compensable under the workmen's compensation laws. (See *Scott* v. *Industrial Acc. Com.*, 46 Cal.2d 76 [293 P.2d 18], where the prior judicial history incident to this litigation is set forth.) The essence of plaintiff's argument is that the issue of jurisdiction was incorrectly decided. He contends that his injury was not one "arising out of and in the course of the employment" (Lab. Code, § 3600), and hence not within the exclusive purview of the Industrial Accident Commission. We cannot agree.

At the very outset, we deem it pertinent to remark that merely because this case reaches us in the form of a common-law negligence action for damages, brought by an employee seeking to avoid the exclusive remedy of the Workmen's Compensation Act, we cannot be oblivious to the time-honored rules which have been established to implement the remedial

purposes of the act. First and foremost is the principle that the provisions of the act "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (Lab. Code, § 3202.) ▮ The effect of this statutory injunction is to require, where there is any reasonable doubt as to whether the act of the employee is contemplated by the employment or whether the injuries were sustained in the course of the employment, that the courts resolve such doubts in favor of jurisdiction in the Industrial Accident Commission. (*Freire* v. *Matson Navigation Co.,* 19 Cal.2d 8, 10 [118 P.2d 809]; *Peterson* v. *Moran,* 111 Cal. App.2d 766, 768 [245 P.2d 540]; *Moise* v. *Owens,* 96 Cal. App.2d 617, 619 [216 P.2d 22].) Though it may be more opportunistic for a particular plaintiff to seek to circumscribe the purview of compensation coverage because of his immediate interest and advantage, the courts must be vigilant to preserve the spirit of the act and to prevent a distortion of its purposes. That the question before us in this case arises out of litigation prosecuted in the superior court is all the more reason for care lest rules of doubtful validity, out of harmony with the objectives of the act, be formulated. ▮ As was aptly stated in *Freire* v. *Matson Navigation Co., supra*: "The rule [of liberal construction of the act in favor of its applicability] is not altered because a plaintiff believes he can establish negligence on the part of his employer and brings a civil suit for damages. If the injury falls within the scope of the act, a proceeding thereunder constitutes his exclusive remedy [citations]."

The law is clear that an employee is entitled to an award of compensation when he suffers an injury "arising out of the employment," and to which he has been exposed "in the course of employment." (Lab. Code, §§ 3600-3601; *Freire* v. *Matson Navigation Co., supra*; *Baugh* v. *Rogers,* 24 Cal.2d 200, 207 [148 P.2d 633, 152 A.L.R. 1043].) ▮ It has generally been held that the phrase "arising out of" is the causal element and refers to the origin of the accident (*Elk Grove Union H. Sch. Dist.* v. *Industrial Acc. Com.,* 34 Cal. App. 589, 594 [168 P. 392]), while the words "in the course of employment" have reference to the time, place and circumstances of the disabling event. (*Griffin* v. *Industrial Acc. Com.,* 19 Cal.App.2d 727, 732 [66 P.2d 176].) Although the two elements must coexist concurrently to sustain an award, they are nonetheless often so intertwined that no

valid line of demarcation can be drawn, so that in certain cases an injury has been considered to have occurred "in the course of employment" because the employment was its cause (*Zolkover* v. *Industrial Acc. Com.*, 13 Cal.2d 584 [91 P.2d 106] ; *Gardner* v. *Industrial Acc. Com.*, 73 Cal.App.2d 361 [166 P.2d 362] ; *Winter* v. *Industrial Acc. Com.*, 129 Cal. App.2d 174 [276 P.2d 689]), while in others the injuries, though emanating from some external instrumentality, were regarded as "arising out of the employment" because they were sustained during and at the place of employment. (*Kimbol* v. *Industrial Acc. Com.*, 173 Cal. 351 [160 P. 150, Ann.Cas. 1917E 312, L.R.A. 1917B 595] ; *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 86 Cal.App.2d 726 [195 P.2d 919].)

█ As expressed in the recent case of *Madin* v. *Industrial Acc. Com.*, 46 Cal.2d 90, 94, 95 [292 P.2d 892] : "Where the injury occurs on the employer's premises, while the employee is in the course of the employment, the injury arises out of the employment unless the connection is so remote from the employment that it is not an incident of it."

█ It is unmistakable from the tenor of the modern cases that the statutory formula for a compensable injury is clearly met when the employment has brought the employee to the place where the accident occurred and if at that time he is engaged in some activity or conduct reasonably attributable to the employment or properly incidental thereto. (*Madin* v. *Industrial Acc. Com.*, *supra*; *Freire* v. *Matson Navigation Co.*, *supra*; *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509 [159 P.2d 625] ; *Zolkover* v. *Industrial Acc. Com.*, *supra*; *Winter* v. *Industrial Acc. Com.*, *supra*.)

█ In the instant case it is patent that plaintiff's injury was so substantially connected with and incident to his employment as to make the case justiciable only before the commission and not before the court. Plaintiff was requested by a fellow employee, who at the time was in charge of the gasoline station, to hold straight a handle on a gasoline pump so that he might complete repairs thereon by tightening some U-bolts. Although plaintiff's regular working hours had ended about two and a half hours earlier, plaintiff consented to lend the required assistance, held the handle straight until the bolts were tightened, and then stepped back from the pump. Plaintiff was standing about 3 feet from the pump on the highway side when the pump exploded within a minute or so after the work was completed. These being the salient facts, it cannot be doubted that plaintiff

was engaged in something incidental to his employment in furthering and facilitating his employer's business. Had Kennedy been repairing the pump several hours earlier during plaintiff's shift, and had plaintiff then rendered the requested assistance, it could not be doubted that in so doing plaintiff would be performing a service within the reasonable and expected scope of his duties and that the resultant injury arose out of and occurred within the course of his employment. Plaintiff's general work in attending the gasoline station clearly encompassed so simple a task as holding upright a pump handle while another worker tightened its bolts. There was no apparent increase in the risk of injury to himself beyond that contemplated by the terms of his employment. He would be doing no more than that which any reasonable employer would naturally expect from a responsible worker and which any employee with a sense of job obligation would do for a coworker. (*Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509, 517 [159 P.2d 625] ; *County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal. App. 736, 739 [265 P. 362] ; *Martin* v. *Guiberson*, 9 I.A.C. 82, writ of review denied.) ▇ It is well established that a workman who sustains injury while rendering reasonably needed assistance to a fellow workman in furtherance of the employer's business is considered to have suffered an injury arising out of and in the course of his employment when the act done is within the reasonable contemplation of what the employee may do in the service of his employer. (*County of Los Angeles* v. *Industrial Acc. Com., supra; Pacific Indem. Co.* v. *Industrial Acc. Com., supra; United States Fidelity etc. Co.* v. *Industrial Acc. Com.*, 174 Cal. 616, 621 [163 P. 1013].)*

▇ Where, as here, the assistance rendered a coworker is reasonably related to the injured employee's duties in the furtherance of his employer's business interests, the cases categorically reject the suggestion that such assistance is to be treated merely as a gratuitous act of personal accommoda-

*The following jurisdictions also support this rule: *Demetre's Case*, 322 Mass. 95 [76 N.E.2d 140, 142]; *Houser* v. *Young*, 247 Ala. 562 [25 So.2d 421]; *Ocean Acc. & Guar. Corp.* v. *Pallero*, 66 Colo. 190 [180 P. 95]; *Hartz* v. *Hartford Finance Co.*, 90 Conn. 539 [97 A. 1020]; *Ramczik* v. *Winona Machine & F. Co.*, 174 Minn. 156 [218 N.W. 545]; *Ransdell* v. *International Shoe Co.*, 329 Mo. 47 [44 S.W.2d 1, 82 A.L.R. 1249]; *Bernier* v. *Greenville Mills, Inc.*, 93 N.H. 299 [37 A.2d 5]; *Associated Emp. Reciprocal* v. *State Industrial Com.*, 82 Okla. 229 [200 P. 174]; *Conley* v. *Pittsburgh Coal Co.*, 157 Pa.Super. 567 [43 A.2d 605]; *Wegimont* v. *Argonne Worsted Co.*, 69 R.I. 360 [33 A.2d 215].

tion. (*County of Los Angeles* v. *Industrial Acc. Com., supra*; *Pacific Indem. Co.* v. *Industrial Acc. Com., supra.*) An excellent illustration of this principle appears in *County of Los Angeles* v. *Industrial Acc. Com., supra.* In that case, the claimant was an election inspector engaged in counting ballots in a small real estate office used as a polling place. In the course of tallying the votes, in the early morning hours, a member of the election board fainted. There was no water on the premises, so claimant went to an adjacent service station to get water from a faucet. In the darkness, she fell into a service pit on the station lot and was injured. It was contended that the injury having occurred off the working premises and while claimant was engaged in rendering a purely personal favor to the coworker who fainted, the injury was not compensable. The court affirmed the commission's award, pointing out that such assistance to the coworker was reasonably incidental to the employment "so that the work of the board could be completed." (P. 739.) *A fortiori*, in the instant case, plaintiff was not in the category of one rendering a service purely for the personal convenience of a fellow employee but was doing an act whose predominant and ultimate effect was to serve his master's interest.

To hold that the service was noncompensible because rendered after regular hours of work would not only penalize an employee's spirit of helpful loyalty to his employer, but would be a restrictive rather than liberal construction of the compensation act. ▉▉▉ It must be borne in mind that the statute does not confine the injuries which it embraces to those arising out of and in the course of employment during regular working hours. In *Griffin* v. *Industrial Acc. Com.*, 19 Cal.App.2d 727, 733 [66 P.2d 176] (hearing den.) the court states: " 'Where the statute by its terms embraces all injuries by accident arising out of and in the course of the employment, *it is immaterial that the injury occurred outside of working hours.*" (Emphasis by court.) To the same effect is *Ramczik* v. *Winona Machine & F. Co.*, 174 Minn. 156 [218 N.W. 545], and *Perdew* v. *Nufer Cedar Co.*, 201 Mich. 520 [167 N.W. 868].

Similarly, in the matter before us, although the service performed by plaintiff was rendered after his usual working hours, it was a simple act of a type which he would have been reasonably expected to render a fellow employee as an incident of his regular duties as a gasoline station attendant.

182

The service was performed on the employer's premises at the request of the employee then in charge and was calculated to advance the employer's interest by keeping his equipment in effective operating condition. The service rendered would also have facilitated plaintiff's conduct of his employer's business on his next shift the following morning, plaintiff having reported the defective condition of the pump. The accident occurred just after the bolts were tightened, while plaintiff was standing within 3 feet of the pump. In the light of the authorities and the liberal construction of the act enjoined upon the courts, it is manifest that the conditions of compensation coverage existed in favor of plaintiff.

A rule of law which would put such an employee outside the scope of his employment and deprive him of the right to compensation would punish loyalty and helpfulness and promote indifference in employees and would be inimical to the interests of both industry and labor. (7 Schneider, Workmen's Compensation Law, 3d ed., § 1668(a), p. 525.) But the authorities previously adverted to place no such unrealistic limitation on the quantum of work-connection encompassed in the phrase ''arising out of and in the course of employment'' and leave no room for doubt that such an injury falls within the benign purview of the compensation laws. But if any reasonable doubts did exist that any of the circumstances attending the injury carried plaintiff outside the scope of the act, such doubts would have to be resolved in favor of compensation coverage. (*Madin* v. *Industrial Acc. Com.*, 46 Cal.2d 90, 93 [292 P.2d 892]; *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509, 514 [159 P.2d 625].) The Madin case also effectively disposes of plaintiff's argument that the compensation act ''excludes an injury which comes from a hazard to which the workman would be equally exposed apart from his employment.'' The fact that plaintiff had ceased rendering his service to Kennedy a minute or so prior to the accident and was leaving the premises is immaterial. ■ ''The right to compensation is by no means restricted to those cases where the injury occurs while the employee is actually presently manipulating the tools of his calling.'' (*Judson Mfg. Co.* v. *Industrial Acc. Com.*, 181 Cal. 300, 302 [184 P. 1]; *Hartford Acc. & Indem. Co.* v. *Industrial Acc. Com.*, 202 Cal. 688, 692 [262 P. 309, 58 A.L.R. 1392].) In *Freire* v. *Matson Navigation Co.*, 19 Cal.2d 8 [118 P.2d 809], a janitor employed by defendant was injured by a car operated by defendant's employee as he,

the janitor, alighted from a cab on a public thoroughfare adjacent to his employer's premises 15 minutes before he was scheduled to work. The traffic congestion was caused by vehicles using the street on the employer's business. In holding that the injury arose out of and in the course of the janitor's employment, the court observed that where the danger of injury is created by the conditions of the employment it is immaterial that the injury occurs on a public street adjacent to the employer's premises a few minutes before or after the working period. The court stated (p. 13) : " 'The employment contemplated [the employee's] entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable time for that purpose.' "

The authorities cited by plaintiff are not controlling because of significant factual distinctions. In *Robbins* v. *Yellow Cab Co.*, 85 Cal.App.2d 811 [193 P.2d 956], an employee whose normal working shift commenced at midnight, was injured on her employer's premises when she came to get her paycheck at 3 p. m. instead of waiting until her shift began. The court pointed out that she was there for her own personal convenience, the procurement of the check at that particular time being "an extracurricular endeavor by her in no way related to her employment." In *State Dept. of Institutions* v. *Industrial Acc. Com.*, 46 Cal.App.2d 439 [116 P.2d 79], the employee was a hospital attendant who had finished her day's work and driven her automobile from the hospital parking lot to its front entrance to wait for her passenger. When the passenger failed to appear after 10 minutes, the employee decided to enter the building to ascertain the reason for the delay. In mounting the front steps, she fell and was injured. Under these facts, the court held the employee was on a purely personal mission not incident to any service for her employer and unrelated to her employment duties. In *Garcia* v. *Yedor*, 67 Cal.App.2d 367 [154 P.2d 1], *Seymour* v. *Setzer Forest Products, Inc.*, 124 Cal. App.2d 608 [268 P.2d 1084], and *Langendorf United Bakeries, Inc.* v. *Industrial Acc. Com.*, 6 Cal.App.2d 46 [43 P.2d 1106], the facts showed that the employees were not engaged in their master's business at the time of the injury, but had either deviated therefrom on a private venture or were engaged in matters of purely personal convenience. In *Ruff* v. *Industrial Acc. Com.*, 123 Cal.App. 168 [11 P.2d 17], the employee was killed when he voluntarily assisted a

stranger at the latter's business establishment. In *San Francisco & Sac. Ry. Co.* v. *Industrial Acc. Com.*, 201 Cal. 597 [258 P. 86], a ferryboat captain attempted to repair an electric line instead of calling a lineman for the purpose. Compensation was denied because the employee was under express instructions that such hazardous repair work was the responsibility of the line crew. In *Poteete* v. *North State Pyrophyllite Co.*, 240 N.C. 561 [82 S.E.2d 693], a foreman visited a work crew after his own hours of work to collect a debt owed him by one of the employees. While there he worked about one-half hour to help unchoke a machine. Thereafter, he sat on a nearby wall to wait for a lull in the work operations so he could collect his debt. Shortly after he sat down, he felt a blinding sensation and toppled off the wall. The North Carolina court held that the claimant's falling from the wall while waiting to collect a debt was not an injury traceable to the employment. These facts afford no parallel to the case at bar.

We are cognizant of the fact that plaintiff, believing himself without fault, regards it to his decided advantage to maintain an action for damages against his employer rather than to receive an award of workmen's compensation. But in deciding whether an injury is compensable, we must disregard completely the question of fault and be mindful that the rules we lay down in this particular case must be salutary and consonant with the spirit and purpose of the compensation act, since they will govern other cases where the act will provide the worker disabled by industrial injury with his sole remedy. Inasmuch as this state is committed to the view that the Workmen's Compensation Act must be liberally construed in favor of coverage for the employee and jurisdiction in the commission and since the facts adduced show there existed a concurrence of the conditions of section 3600 of the Labor Code, the trial court correctly ruled that the commission was the exclusive tribunal for the prosecution of plaintiff's rights.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied April 16, 1956, and appellant's petition for a hearing by the Supreme Court was denied May 15, 1956.