**Barbara GUINN, Appellant
(Plaintiff Below),**

v.

**Craig A. LIGHT, and Gerald R.
Funderburk, Appellees
(Defendants Below).**

No. 27A04–8709–CV–265.

Court of Appeals of Indiana,
Fourth District.

April 10, 1989.

Vicent Kelley, Anderson, for appellant.

Geoffrey Segar, Carolyn O'Connor, Ice, Miller, Donadio & Ryan, Indianapolis, for appellees.

## OPINION ON PETITION FOR REHEARING

CONOVER, Presiding Justice.

Appellees Light and Funderburk have filed a petition for rehearing, claiming this court erred in its original opinion in several particulars. One issue they raise perhaps needs more exposition, namely, whether the Medical Review Panel provided by the Medical Malpractice Act has authority to determine whether a particular health care provider is "qualified" under the Act. Appellees insist it does not because that Act provides

> The. panel shall have the *sole* duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standard of care as charged in the complaint. (Emphasis supplied).

IND. CODE 16–9.5–9–7. Appellees insist this limiting language prohibits such a panel from determining whether it has jurisdiction of the particular case under consideration. We disagree.

Statutes which vest authority to act in administrative agencies necessarily grant authority to that agency to determine whether it has jurisdiction to act in a given situation. *Macauley v. Waterman S.S. Corporation* (1946), 327 U.S. 540, 66 S.Ct. 712, 714, 90 L.Ed. 839; *Anderson Lumber & Supply Co. v. Fletcher* (1950), 228 Ind. 383, 89 N.E.2d 449, 452; 2 Am.Jur.2d, *Administrative Law* 332, Lawyers Co-op. Pub. Co. (1962).

The Medical Review Panel can act only if the health care provider before it is "qualified" under the Act. If so, the panel has statutory authority to proceed under the Act; if not, any further action of the panel

in the given case is ultra vires and void. *Anderson Lumber & Supply Co., supra.* Clearly, the panel has the implied authority and duty to make that determination because it bears directly upon the question of whether the panel has jurisdiction to proceed further in the matter at hand. Thus, the Medical Review Panel here had authority to determine whether Light and Funderburk were "qualified" health care providers as the *sine qua non* of its jurisdiction to proceed further.

The other issues raised by appellees in their petition were adequately covered in our original opinion. 531 N.E.2d 534.

Petition for rehearing denied.

MILLER, J., concurs.

GARRARD, P.J., concurs with separate opinion.

GARRARD, Presiding Judge, concurring.

Indiana's Medical Malpractice Act, IC 16–9.5–1–1 *et seq.*, was enacted in the face of a perceived crisis in the delivery of adequate medical care to the citizens of Indiana occasioned by allegedly skyrocketing malpractice insurance premiums for health care providers and the withdrawal of a number of carriers from the field. It sought to reach that problem.

The basic scheme of the Act is to require that claims of medical malpractice be submitted to a medical review panel before they may be pursued in a court of law. IC 16–9.5–1–6, 16–9.5–9–2.[1] The review panel, consisting of one lawyer and three health care providers, is charged with rendering an opinion as to whether the evidence supports the conclusion that the defendants failed to observe the appropriate standard of care. IC 16–9.5–9–7. Both the opinion of the panel and the testimony of its members are then available to either party if the claim proceeds to trial. IC 16–9.5–9–9. In this manner the Act seeks to promote settlement of claims and, in the event litigation is pursued, to provide substantial evidence of liability or non-liability, as the case may be.

Secondly, the Act places a maximum limit on recovery of $500,000 and limits the liability of a single health care provider (including his or its agents and employees) to $100,000. A patients' compensation fund is established to cover any shortfall between the liability of the provider(s) and the maximum limit. IC 16–9.5–2–2. To ensure the efficacy of this plan the Act requires that the health care providers furnish proof of financial responsibility for their potential $100,000 liability, IC 16–9.5–2–1, 16–9.5–2–6, and that they pay an annual surcharge established under IC 16–9.5–4–1 to maintain the patients' compensation fund. IC 16–9.5–2–1, 16–9.5–4–1.

The Act broadly defines health care provider, IC 16–9.5–1–1, and we have liberally construed the statute as applicable to conduct reasonably capable of being included within the term "health care conduct." *See, e.g., Methodist Hospital v. Rioux* (1982), Ind.App., 438 N.E.2d 315.

Recognizing, however, that some health care providers might fail or refuse to procure or maintain the necessary financial responsibility (including payment of the surcharge) necessary to the integrity of the plan, the legislature provided in IC 16–9.5–1–5:

> A health care provider who fails to qualify under this article [by meeting the proof of financial responsibility requirements] is not covered by the provisions of this article and is subject to liability under the law without regard to the provisions of this article. If a health care provider does not so quality [sic] the patients' remedy will not be affected by the terms and provisions of this article.

In the instant case plaintiff Guinn desired to pursue a claim for malpractice against the defendant dentists based upon their conduct of August 10, 1982.

In apparent compliance with IC 16–9.5–9–1 and 16–9.5–9–2 she filed her proposed complaint with the commissioner on July 16, 1984. Three days later she was advised

---

**1.** An amendment, IC 16–9.5–9–2.1, subsequently permits bypassing the review panel procedure where the plaintiff limits the claim to not more than $15,000.

by letter from the commissioner that the dentists were not qualified health care providers. Even so, a medical review panel chairman was selected by the parties and the dentists served interrogatories. Subsequently, on April 15, 1985, the parties received notification from the chairman of the medical review panel stating it did not have jurisdiction over Guinn's claim because the dentists were not qualified providers. Forty-four days later Guinn filed her civil action in court.

The dentists at that point sought to use their failure or refusal to avail themselves of the shield provided by the Act as a sword against plaintiffs. They secured summary judgment on the basis that since they were not qualified under the Act, the statute of limitations had expired while Guinn's proposed complaint was pending before the medical review panel. We reversed, holding that the complaint was timely since it was filed within 90 days of the decision (determination of lack of jurisdiction) of the review panel, citing IC 16–9.-5–1–1.

In their petition for rehearing the dentists urge that this was in error. They capably and earnestly argue that the plain language of IC 16–9.5–1–5 provides that since they failed to become qualified providers, the entire Act has no application to them. Therefore, they urge, the old medical malpractice statute of limitations contained in IC 34–4–19–1, which the court in *Nahmias v. Trustees of Ind. Univ.* (1983), Ind.App., 444 N.E.2d 1204 thought to have been superseded,[2] must be applied and bars Guinn's action.

There is no gainsaying that if we are to consider only that section and the bare words it contains their argument has some merit.

Yet, the argument appears to prove too much. It will be the rare occasion indeed where a claimant knows in advance whether or not his health care provider is quali-

fied. Accordingly, if he attempts to comply with the apparently applicable malpractice act by filing his proposed complaint with the commissioner, then as soon as two years following the occurrence of the asserted malpractice has expired, his claim will be totally barred whether or not anyone has yet advised him that the health care provider was unqualified. This provides a very real risk for the unwary since the whole statutory scheme seeks to induce claimants to commence by filing with the commissioner. *See, e.g., Johnson v. Methodist Hospital* (D.C.Ind.1982), 547 F.Supp. 780; *Ogle v. St. John's Hickey Mem. Hosp.* (1985), Ind.App., 473 N.E.2d 1055.

Under the dentists' proposed construction, the only safe alternative for counsel who does not wish to be subjected to his own malpractice claim would be to file both a proposed complaint with the commission and commence a civil action in circuit or superior court in each and every medical malpractice case. That can hardly be what the legislature envisioned. The strict application of IC 16–9.5–1–5 without regard to the rest of the Act does not appear to further the legislature's intent in enacting the statute.

Another construction is also available, however. A basic rule of statutory construction admonishes us that a statute is to be construed as a whole. *Foremost Life Ins. Co. v. Dept. of Ins.* (1980), 274 Ind. 181, 409 N.E.2d 1092, 1096; *Thompson v. Thompson* (1972), 259 Ind. 266, 286 N.E.2d 657, 661.

IC 16–9.5–9–2[3] provides that "no action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this chapter and an opinion is rendered by the panel." The statute does not limit its apparent application to "qualified" health care providers. Similarly IC 16–9.5–9–1, which tolls the running of the statute of limitations until 90 days fol-

---

**2.** No express repealer of this section appears in the Medical Malpractice Act or any of its amendments.

**3.** Subsequent amendments provide exceptions where the parties expressly agree not to use the panel or where the claimant limits her claim to a maximum of $15,000. *See also* IC 16–9.5–9–2.-1.

lowing the receipt of the opinion of the medical review panel, does *not* purport to limit its application to the limitations period of the Medical Malpractice Act. Instead, the tolling provision states, "The filing of a proposed complaint tolls the *applicable* statute of limitations...." IC 16–9.5–9–1 (emphasis added). Thus, the tolling provision may be reasonably applied to IC 34–4–19–1 if there is a jurisdictional basis for doing so.

The dentists are expressly within the definition of health care provider and the claim against them was presumably subject to the Act. Ordinarily an administrative board or agency is empowered to determine its jurisdiction to act. *Leedom v. Int'l. Union, M.M. & S.W.* (1956), 352 U.S. 145, 77 S.Ct. 154, 1 L.Ed.2d 201; *Anderson Lumber Co. v. Fletcher* (1950), 228 Ind. 383, 89 N.E.2d 449. As the court stated in *Scott v. Pacific Coast Borax Co.* (1956), 140 Cal.App.2d 173, 294 P.2d 1039, 1042:

> Whenever a court or board is authorized to act upon the existence of a certain state of facts, it has jurisdiction to determine the existence or non-existence of the requisite facts.

The dentists point out that the real function of the review panel is to provide an expert opinion. We agree. Nevertheless, they are empowered to determine whether that opinion is called for since the Act provides for no other body to make that determination. (The legislature might have assigned to the commissioner authority to determine whether providers were qualified, but it did not.)

Construing the Act as a whole it appears that the legislative intent is most clearly promoted in this fashion. Claims should uniformly be filed with the commissioner for reference to the medical review panel. The goals of a statute of limitations to provide notice to a defendant and enable him to preserve evidence, etc. are clearly met by such filing, and the applicable statute of limitations is then tolled until ninety days following the decision of the medical review panel, including the determination by it that it lacks jurisdiction to render an opinion because the health care provider is

not "qualified." At that point, in further response to legislative intent, the Act has no further application to the non-qualified provider. It appears that this construction would then most closely satisfy the legislative intent.

For these reasons I concur in denying rehearing.